Good morning everyone. And the first matter is Fabg v. Director of U.S. Immigration&Customs Service. May it please the court, Ira Kurzban, Ian Shaw, and Thomas Mosley for the appellants. Judge McKee, may I reserve three minutes? Sure. And I want to thank both sides for really promptly responding to the request we sent out. I guess we sent it out late Tuesday and we did get requests promptly and I know that was not that easy to use. So I want to thank you both for doing that. In 2013, the Immigration&Customs Enforcement established a sham university in Cramden, New Jersey. This university had all the trappings of a real university. They developed a website. I don't know who developed that website. Probably a couple folks with some beer and pizza over the weekend. But it is absolutely remarkable. It is ingenious. Yeah. And not only that, they had an INS agent posed as a dean. Mr. Kurzban, what do you want us to do for you? I'm sorry, Your Honor? What do you want us to do for your clients? We believe this case should be remanded back for a full evidentiary. But your client's in the United States now, right? I'm sorry? Your client's in the United States. Well, some of the clients still remain in the United States. The lead plaintiff, the main plaintiff is in the United States now, correct? Two of the clients are in the United States. Three, two of the clients are out of the United States. I'm sorry, three of the clients remain in the U.S. Two of the clients are out of the United States, but they all are subject to the fraud finding that was made initially. Well, but are they? Because according to the submissions that were sent to us, some of them have been reinstated. I want to ask you about that fraud finding. I don't quite get where it comes from. It's in the April letter, but it appears not to have any impact. And it doesn't look like, and I can ask you about this, but it doesn't look like the government is relying upon the language in that April letter as any kind of a finding of fraud. OK, well. For the students, anyhow. I think I need to explain each of the cases, Judge McKee. For example, in the reinstatement petitions, a careful review of each of those reinstatement petitions, only four of them sought reinstatement. Each of them indicates that they are not eligible for reinstatement because the way that the government has determined that the five-month period. In other words, you're only allowed reinstatement within a five-month period. Five months from when? That's a problem. Five months from when? I'm sorry? Five months running from what point? Because that's an issue here. At what point does it begin to run, the five months? At what point? Does it begin to run? Oh, that's the interesting question. Absolutely right, Judge McKee. The question, one would think that the five months would run from the date of termination, which was April 2016. But a careful review of those four reinstatement petitions all indicate that the government takes the position that since they were involved in fraud, that it goes back to the original date that they applied to enter the university. But the fraud here is on the part of the brokers. I mean, they're the ones who were engaged in the fraudulent conduct. Is there any evidence to suggest the students knew they were being sucked into a sham university when they applied? That's the government's position, apparently, or at least ICE's position and now USCIS's position was that they were involved in fraud from the inception. Is that finding part of their record now? In other words, if they leave the country and come back, they will know immediately that they were involved in a fraud. Is that fairly accurate? I'm sorry, Your Honor. The government will know if they leave the country and come back. The government will know that they were involved in a fraudulent scheme. Right. Their position is. So they would generally not be admitted at that point. I mean, fraud is a crime involving moral turpitude, so they would not be admissible. Is that also accurate? I'm sorry, Your Honor. I'm having a little difficulty hearing, if I may. So let me. My apologies. No problem. Go ahead. Can you hear me now? That's a little better. So if they are charged with being involved in a fraudulent scheme, and of course, they I think the vast majority of them were removed from the country. And they were to apply to come back. It would appear on their record that they were involved in a fraudulent scheme. They would be inadmissible in this country. Correct. Under 212-86-CI, there's a there's a ground of inadmissibility that says if you've been involved in a material misrepresentation. Back to Judge McKee's question. There was no indication that they knew that this university, the University of Northern New Jersey, was a sham. Well, not only that, they had every. That's accurate, right? Yes, that's accurate. But not only that, in this circumstance, Your Honor. They all saw it because they were graduate students, curricula, practical training under the regulations at 214.2-F-10-I. One could begin to work before they actually took classes. So the fact that they were working first before they actually physically took a class was permissible if they got the permission of. Let me ask you this just so I get a better picture. So they showed up. They got advertisement from a broker, and I assume they paid money. I mean, the broker's got to be sham brokers. They're in it for profit. So they come to the United States. They show up at this place that's supposed to be the University of New Jersey. And what do they see there? Well, what they get is they don't actually even show up at the university. They are told that they can go and continue their work. And that's why 214.2-F-10-I is so important, because the brokers are telling them, you don't actually have to attend classes at the beginning if the designated school. Let me go back to Judge Rousseffo's question. So what do you want? We've got some of the people who are in the petitive class have petitioned for and been granted reinstatement of their F-1 visa. Some haven't. It's not clear to me of those who have left. I think Fang may be one of them who have, quote, abandoned their request for an F-1 visa. I don't know if they abandoned it because it had been denied and being the language in that April letter they assumed is futile. Why bother? If that's the case, that's the problem is for them. But some of these folks are back in. They're attending university someplace else, real universities. So what do you want from us? Okay. Well, in fact, all of these people have a lingering problem. That is, and that's part of the problem because the record here isn't. Okay. Quickly. The fraud, right? The fraud determination? Well, not only that. The fraud determination and the 10-year bar determination. Fang and we. They're the same thing. The 10-year bar kicks in because of a prior finding of the fraudulent conduct. No, actually it's separate. It kicks in because of the termination. And then the termination, the government has now determined that it's retroactive. So that means they've been out of status. Wait. Why were they terminated? Well, they were terminated for the fraud. There's no. Absolutely. So who's in first? And that is. So if they're terminated because of the fraud, the 10-year bar kicks in because of the fraud. And the lifetime prohibition would kick in because of a finding of fraud. Isn't that right? No. There's actually two separate grounds of inadmissibility here. One is the fraud, 212A6CI. But the other is. Isn't that hypothetical? It's a hypothetical situation because these students have been readmitted. No, it's not a hypothetical situation at all. Because Mr. Fang and Mr. Lee are out of the country. The two. They're out of the country. They were denied the F-1 visa, terminated. No. They left the country because they thought by leaving when they did. One got voluntary departure. The other just left. They would avoid the 10-year bar. But in fact, under the government's interpretation, which is that determination is retroactive back to when they started, they're all subject to the 10-year bar. So when they go and apply for a visa tomorrow, putting aside the fraud issue, which they still have, 212A6CI, they have a separate problem. 212A9B says that if you remain illegally in the U.S. for more than a year and you depart, you cannot come back for 10 years. Could you be specific and say what is it that you are asking this court to rule? We're asking this court to remand this case back to the district court to have a full hearing. We've made a due process claim. A hearing on what? A full hearing on the termination with regard to our plaintiffs and a determination as to whether or not they committed fraud. You keep saying it goes back to fraud. You keep saying it doesn't, but then you keep bringing it back to fraud. No, no. It does go back to fraud. Okay, all right. There's no question about that. I was just saying there's a second disability. But absolutely right. The major question here is termination due to fraud. You brought this as a class, correct? Yes, we did. How do you reconcile that with every one of these individuals being in a different posture? So isn't it really a series of individual lawsuits? No, because they're all in the same posture with respect to the termination due to fraud. They're all in the same posture with respect to the fact that they're now subject to the 10-year bar separately. Hold on. Where's the 10-year bar coming from? Okay. It comes into play when somebody, for example, two of the plaintiffs, just to give the court an example, Li-Fang Lin, who was one of the original plaintiffs in this case, she sought to adjust her status based on a marriage to an American citizen. They denied the adjustment initially saying she committed fraud. Okay, wait a minute. They could have also. Help me with this, okay? Okay. Let's assume the fraudulent quote finding goes away. Then where's your problem? We still have the issue with respect to the 10-year bar. We don't know how many. 10-year bar, I thought we just agreed, arises from the finding of fraud, doesn't it? No. Where's it coming from? Under a different section of the Immigration Act, 212A9B says, in the case of Li and Fang, where you leave the United States and you seek to come back, you're barred for 10 years because you were out of status for more than one year before you left. That can't be the case. If I'm a student at a university and have an F-1 visa and I go home to celebrate a holiday with my family. No, no, because they're in valid status. The government's position is they were not in valid status. Why aren't they in valid status? Because they were terminated in April. Why were they terminated? Because of fraud. Oh, wow. Okay. Let me repeat my question. If the fraud goes away, what is the problem? If it goes away. Okay, if the fraud goes away and the termination goes away, that is they are put back in student status. Yeah, but two different things. Because some of them may not be students though, so they can't put them in student status if they're not students. Right. So that's when the fraud goes away. Where are we? Okay. If the fraud goes away, it depends on how the government interprets 212A9B. Our position is that that should not be a bar, but it may still remain a bar. I don't know because I don't know how the government is going to interpret it when, for example, someone marries an American citizen. Let's say Mr. Li, who's now in China. The fraud goes away. He goes to the embassy. He seeks to obtain a new F-1 visa to return to the United States. The embassy could say, the consular officer could say, they're barred for the next 10 years because he overstayed his time. So it's both the termination and the fraud fine. And you want us to remand this to the district court so the district court can sort this out and hopefully from your standpoint remove the 10-year ban and determine that no fraud was committed. That's exactly right. And determine that termination was improper to begin with. Two different points, though. Yes. Even if no fraud was committed on the part of the students, that doesn't mean the termination was improper because there weren't students. I mean, in other words, our view is the termination was not proper, even if there was no fraud. And here's why. No, I understand your argument. Let me hear from Bress. You saved some time for rebuttal. Thank you, Your Honor. Joshua Press from the Department of Justice on behalf of the appellees. Can I keep your voice up a little bit? Sorry. Mr. Crisman, are you able to hear Mr. Press okay? Yes. If I might, I'd like to introduce Daniel Myler from the United States Attorney's Office for the District of New Jersey, my co-counsel on this matter. Usually the one who remains behind did all the work, I'm assuming. So I want to thank you for all the work you've done in this case. Thank you for thanking him on my behalf. I would say that it is a cooperative approach. I'm sure you would. I'm not sure you would. It wasn't your Sunday. I bet it was his Sunday. But, anyhow, go ahead. He used to be at a big firm. I don't know how that works. But, Your Honors, I think all of your questions as to what exactly is the proper relief in this case go to the crux of the problem with this case and why Chief Judge Linares dismissed this case. All of the plaintiffs are, in fact, prime examples of why this court should wait for the administrative process to play itself out. Each of the plaintiffs, of the named plaintiffs. How would that work? Well, the. . . For each individual plaintiff, it would be a different administrative process, I take it. Yes. So some of the plaintiffs only went through reinstatement processes through USCIS as was articulated in the April 2016 letter. Some of the plaintiffs went through reinstatement and then went through removal proceedings, or those proceedings were going on simultaneously. The removal proceedings are in front of an IJ with the Executive Office of Immigration Review at the Department of Justice. Does that address the label of having committed a fraud? Well, I do want to address that. No one has committed fraud in terms of the SEVIS database. But that was the basis for their exclusion from the country. Well, that was. . . First off, no one's been excluded from the country. I want to note that in terms of just having been an enrollee at UNNJ. The notation in the SEVIS database is something that typically, I'd say in the vast majority of cases, gets done by a school officer, not a government employee in any manner. And that can range from. . . A school officer at the university? Yes. It didn't exist? Yes, exactly. In this case, obviously, it was a government official because there was no school officer. But typically, it will be a designated school official who, let's say at Temple, which is a great school here in this city, they would say, you know, this student stopped going to class or stopped paying and therefore is no longer attending and therefore is not taking a full course of study, which is what's required under the regulations in this instance to maintain F-1 status. There was no fraud here. These students, as far as we're concerned, were the victims of fraud. They were caught up in it. Let's just stop there. How do. . . That might fix this whole thing. Yes. What can the government do to assure the plaintiffs that what you just said is somehow made into their official records so that the 10-year bar that he's talking about and the, I think, lifetime ban that could arise if they've been guilty of certain kinds of violations while here so that that doesn't become a problem for them? Well, I don't think there's anything specific for the government to do in these cases. I think the best example of that is Plaintiff Zhang, who is now attending the University of North Texas on F-1 status. And if what plaintiff is complaining about in this case with respect to the database entry that a school officer typically would enter into that database, if that is government action for the purposes of an APA case, then basically any sort of metadata that the government collects would always give rise to an APA claim. That cannot be the case. I didn't hear an answer to that. Yeah, that's not really. . . Mr. Price, the point is the label of fraud. And that was the basis, as I understand it, for the removal from the country. They were participants in a fraud. No, they were not participants. But they were charged with having committed a fraud. I believe the district court even mentioned that as well. Well, that is not. . . But you're saying, no, no, there's no fraud here. I'm a part of the student. As I articulated, I think, by Judge McKee in his questioning, they were caught up in it in the sense that they were victims by the academic recruiters. So can this fictitious school officer get back into the database and say that fraud should not be attributed to this individual applicant? Well, I suppose that they could. I don't think that that's really what's called for in this case, considering that some of the plaintiffs aren't getting F1 students. It really is. Everything I read suggests that these students were removed from the country for being participants in a fraud. And that's wrong, you say. They were not removed from the country. I mean, three of them are still in the country, and the two that left the country, one took voluntary departure. Maybe let's put it this way. They were charged with removability. Yes, so four of the plaintiffs were charged with removability. And they're still in that status. Well, that's not a status. That's a charge. I would say that the IJ. . . Staying corrected, but there's still a fraud. Participant in a fraud is part of their record. It's not participation. It's caught up in that fraud. Let me read you what the students were sent. This is the April 4, 2016 letter. I'll just read the first paragraph. This letter is to inform you that your SEVIS record and your form I-20 SEVIS ID number blanked out, issued by the University of Northern New Jersey, that great and noble institution, with a school code, has been set to terminated status, quote, the whole thing is a quote, due to your fraudulent enrollment in the above school. That's what they were hit with. Right. That's why they left, those who did leave. That's in the passive voice. It's not that they enrolled fraudulently, which would be much more akin to them committing an act. Are you seriously suggesting that in the future these students should rest assured they don't have to worry that anyone's ever going to assess them with fraudulent activity because the letters that were sent to them telling that their enrollment was fraudulent was in the passive voice? That's their defense? Run or note the passive voice? I think whether they committed fraud, like if it's brought in a case in a district court level, needs to be specifically pleaded or specifically stated. Let me ask you a question. That's a serious challenge. Let me ask this question one more time, and I'm looking for a yes or no. Okay. Is the government in a position to get into the database and eliminate any notations with respect to fraud attributed to these students' enrollment at the University of New Jersey, yes or no? Yes. Yes. Yes. I mean, you're wrong. You know what this reminds me of? It reminds me of the fake stash house. You set up a fake program. Those are criminal cases. In order to lure students from other countries, they pay their way over here thinking they're going to an actual university, and then they get caught up with involvement in a fraudulent scheme orchestrated by the government or the agency, let's say. So those are typically entrapment cases that are criminal in nature. This has got nothing to do with that, and the adverse collateral consequences are not here in these cases, and that's best evidenced by the plaintiffs in this case. If they did have a problem with this, and I think the two plaintiffs who are in removal proceedings, if that were a problem, that problem and due process claim that they're making can be channeled to this court. But the ultimate purpose was not the students. It was to catch the brokers, actually. Yes, absolutely. So let me just go back to the question you answered, yes. Will the government do something to assure these students that this fraudulent reference is not included in the database? Well, I think that's playing itself out. That would be a yes or no. Can the government do something? No. So the government won't affirmatively correct the record, so to speak. Well, because the record, as far as we're concerned, is not having a deleterious impact on these plaintiffs. So tell that to the students who left and are trying to get back in and are concerned about a 10-year bar or a lifetime bar because of fraudulent activity. So I want to speak to that. Number one, with respect to Plaintiffs Fang and Lee, the bar kicks in if there was a finding of fraud. There was no finding of fraud by an immigration judge. Say that again. The bar, the 10-year bar kicks in if there's a finding of fraud by an immigration judge. That never occurred. The two plaintiffs left the country, one through voluntary departure and the other on his or her own, in the middle of removal proceedings. And the whole argument about I can't get back into the country because of the 10-year bar, that's entirely anticipatory. It is not right in any way. They never made any sort of allegations that they wanted to get back into the country at the time. They've never made that argument now. They've never taken any step to try to get back into the country. Some of them have. According to your Friday letter, some of them have tried to come back. With respect to which students? Are we talking about the named plaintiffs or other former enrollees? The class, but not the five people who are named on the. I think those who have wanted to come back have been allowed to come back. And I guess that's another prime example of how this database entry is not being held against the former enrollees. So that's why the administrative processes need to be playing out here, because it's a case-by-case determination as to whether the students just simply got caught up in it or knew something more. That's sort of why we have the administrative processes that we do. What's the next step in the process? Well, it would depend on which plaintiffs we're talking about. For the Patel plaintiffs who are still in the United States, I think one of them has a hearing in October in front of an IJ, and the other has a hearing in January in front of an IJ. The hearings are to determine what? Well, they're to determine exactly why they were NTA'd by ICE. I would say that some... What is NTA? It's a Notice to Appear. It's essentially a charging document that initiates the removal process. Some of the students who have been NTA'd by ICE and gone to immigration judges, their proceedings in front of the immigration judges were terminated because the IJs found that they had no knowledge of what was going on. And as opposing counsel articulated, those students who took curricular practical training, as they were told, they could work as long as it was going towards their major. That seems to be true for all of these. Yes. And so many of the students... They had no knowledge that they were about to go into a fake university. Yes. That is true for all of them? None of them knew that they were... As far as I'm aware, that is correct. I think suspicions could come up if they started to ask, what professors will I be taking courses from and things like that. The university just said, we don't know yet. Just go ahead. You can work, and we'll figure that out once we figure out the next semester's course. And that could be in a specific case that comes up in front of an immigration judge. We don't know because each student's experience will be different. I will say that with the Patel plaintiffs here, their reinstatements were denied, for example, because they said they did attend online classes. And that, of course, sort of led to, well, you're not being entirely truthful with us. We are not going to grant your reinstatement applications. All of those facts are going to be before an IJ. And all of these same arguments about, you know, this is like a stash house are going to be in front of an IJ. And all of these arguments about whether this violates due process or whether this violates the... will be channeled, and it's supposed to be channeled, through the petition for review process to this court after their IJ and appeals to the BIA are concluded. So this is really not of the moment right now, but I ask your opposing counsel this. Is this case amenable to class disposition? I don't think so. I think these plaintiffs proved that. I think your point and your question sort of shows that each case is going to be adjudicated depending on the specific facts of that student. As Judge McKee articulated, if a student says, well, I did try to ask about a professor and I was told, don't worry about it, you know, that they'll come a little later on, that might put someone in a completely different position as a student who's trying to portray himself as having attended online classes. Whether they're in immigration proceedings is typically something that's completely different than Ms. Plaintiff Zhang, who's already on F-1 status at the University of North Texas right now. So the class that they were trying to go for sort of proves the point that it's over-inclusive. We don't need to get there simply because they never really brought either a claim that this court or the district court would have jurisdiction under or going to the merits lacks final agency action. I think our briefing sort of shows that there's some clarification that's necessary from this court and that's sort of percolating across the circuit courts. So going through the administrative process, is there every possibility and maybe even probability that the student's status can be determined and that maybe they were not participants in fraud? Absolutely. That's absolutely what's happened. I think in our response letter to this court's questions last week, we did bring up that some of them who went through in front of an IJ, those removal proceedings were terminated because the IJs found that they were not part of the fraud at all. So what he's talking about with respect to a 10-year bar or finding a fraud, all of that is entirely anticipatory, specifically. Besides the two Pichels, which of the other immigrants are in line for hearing before immigration? Well, none. That's it? Because Plaintiff Zhang and Lee left the country either through voluntary departure, which sort of stops the whole thing, and or left on their own in the middle of the procedure. So I guess the voluntary departure concern would be if, as part of that voluntary departure proceeding, there was this cloud of fraud. That's the problem. Well, right. There was no finding on that. And as I said before, just a database entry is not really proof of that. And the letter passed the voice, that's no proof of that at all. That's not proof of it, but it's accessible to anyone who has an interest, who is checking on the immigrant status coming into the country. Well, it's that way because everyone who gets a SEVIS database entry or a text database entry. It's there, but it's not there. It's like shorting his kit. Well, no, it's simply metadata that's communicated to DHS employees about entrance or admission history. And that's what's relevant here. But it's not having an adverse impact on these plaintiffs, and that's borne out by their circumstances. This court should allow for the administrative processes to play out. But even the ones that are not involved in the administrative process, the problem is that label of having committed a fraud when, in fact, they were lured to a university not knowing that it didn't exist. Well, so we would refer, Your Honor, to this court's decision in Penhall that they were already in immigration removal proceedings. They cannot manufacture final agency action by stopping that process on their own, by either taking voluntary departure or leaving the country, and thereby ceasing the removal proceedings. That would sort of pervert the entire process that this court laid out in Penhall for the purposes of final agency action. If there are no further questions, we would sooner agree. A lot of questions, but I'm not sure. Well, I'm happy to take any other questions. Well, the fraud thing is still bothering me, and I sense from my colleagues, I'm not alone in that concern. When I read the April letter, I did not read it as a finding either. But I'm not an immigration judge, and given how the statutory scheme and the regulatory scheme looks at somebody who is here doing something, quote, fraudulent or improper while they're here, the impact that can have on their future likelihood of coming back in, I can't blame the plaintiffs for being really concerned that this cloud is hanging over them. They said today it's not really a cloud. It doesn't mean anything. But I'm not sure that if I were in their shoes, I'd rest very comfortably with that representation. I think that's what Judge Restrepo asked you, what can you do to fix this? Well, there's nothing that can be done other than allowing the agency, going through the agency process, going through the reinstatement process. But they're not here. They're in a different country. They may want to be here. They may want to come visit. They might want a temporary stay. I don't know. So as I said before, I do think – You say it's not part of their record. It is, right? They don't have a record. They aborted the process on their own. Why wouldn't it be something as simple, this is not a judicial concern, but just a practical concern, which sometimes escapes the fine-tuned mind of lawyers, send a letter to all of the people saying that the government does not mean to suggest or imply that there's been any improper conduct on the part of any of these students who were themselves victims of this fraudulent scheme. And to the extent anything in the April 26th letter can be read to the contrary, the word fraudulent should only be interpreted, even though it's in a passive voice, as applying to the brokers and not to the students who are victims of this scheme. That would do it. Well, I don't even think that the plaintiff's complaint went so far as to asking for that sort of level of micromanagement. I know. They didn't. They didn't ask for that. For a new letter or rewording of the letter. They're asking the district court to find no fraud. They're asking the district court to say there's no fraud. I don't think that that's necessarily needed when the actions of the agency is evidence that there hasn't been a finding of fraud. And what I would say is that that letter was written by Homeland Security Investigations. It's part of ICE. The removal proceedings are in front of immigration judges. They do not care what ICE says before them. I mean, they care in the sense of the charging documents. But they make findings. The IJ makes findings. Yes. Well, the IJ makes findings based on the facts that are presented to him with cross-examination. All of those things sort of get weighed in front of an immigration judge. And I would say that this court's decision in Penhall mandates that that process be allowed to play out. Now, when a plaintiff abandons those processes, he or she should not benefit from that abandonment to create or manufacture a final agency action. That would subvert the entire process or the administrative exhaustion principles that other decisions by this court have articulated are important and should be allowed to play out as due respect to a coordinate branch. Well, we understand your argument, Mr. Price. Mr. Crisban, you deserve to take three minutes. Thank you. Thank you. You don't have to take those three minutes. You can waive the three minutes if you want to take them. Your Honor, let me start with what I regard as a profound disagreement with the government with respect to the facts in this case, and that's the problem with not having a record. The record here actually is what we alleged in the complaint. There's nothing more. The government, for example, is telling you today that people's deportation hearings were terminated because there was a decision that they weren't involved in fraud. There were about 1,000 students at this phony university. Five hundred of them we know were given this letter. The other 500 we don't know. I don't know if the other students were put in removal proceedings and they proceeded to do that. Right. We just don't know. And that's the problem. And it goes really to Judge Restrepo's question, is this a class? The class is defined as persons who were terminated and were given this letter. In other words, they were terminated based on fraud. Period. We're not concerned with the people who did not get the letter. Right. The 500 who did. Right. We don't know anything about it. So the bottom line is different people may be in different circumstances right now.  She married an American citizen. She went to an adjustment interview, and she was told at the adjustment interview based on that fraudulent letter, you are not admissible into the United States. And she then had to apply for a waiver. That's because having participated in a fraud? I'm sorry? That's because she participated or was involved in fraud?  Okay. And remember, one of the clients. We get exactly what you're asking. Do you want to go back to the district court? I want to go back to the district court. You asked why. We want the district court to enter an injunction, in effect, saying that the government cannot use that letter for any purpose, that they cannot make a fraud finding unless the individuals are given an individual. Well, why not just ask Mr. Preston, his hardworking associate, the gentleman right behind you, ask him for the letter? Do we really need to bother the district court judge with this case? I know he's really anxious to see you again, but do we really need to do that? Why not just sit down and resolve it? Well, we tried to resolve it before, and we, you know, without going too far, we did have initial discussions about how can we resolve this case, and the bottom line was the government maintained the position that those letters were valid, that they had a basis to determine. Well, they are valid. That's not the point. The letters are clearly valid. Right. No, I'm sorry. That the finding of fraud was valid. There's no finding, though. You just heard Mr. Preston concede there's no finding in that letter. There's no finding. Well. That is to your clients. Well, whether the government is standing up here and saying that today, the fact is. That's why a letter would be helpful. Well, the fact is that they're using it as a grounds of inadmissibility in lots of different cases. Okay. All right. Thank you. We understand your argument. Thank you.